# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 20-196 (ADM/BRT) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENSE MEMORANDUM IN** |
| | ) | **SUPPORT OF PRETRIAL RELEASE** |
| ABDELHAMID AL-MADIOUM, | ) | |
| | ) | |
| Defendant. | | |

The defendant, Abdelhamid Al-Madioum, by and through his attorney, Manny K. Atwal, respectfully moves the Court to release him pending trial. Mr. Al-Madioum is scheduled for a detention hearing on Tuesday, September 29, 2020. He is requesting he be released to his parent's home in the metro area and placed on 24-hour lockdown with GPS monitoring.

## PROCEDURE

Twenty-three year old Mr. Al-Madioum was indicted on September 10, 2020. He has been charged with one count of Providing Material Support to a Designated Foreign Terrorist Organization pursuant to 18 U.S.C. § 2339B(a)(1). It is alleged that Mr. Al-Madioum provided himself to ISIS from July 2015 through March 15, 2019 – the day he self-surrendered to the Syrian Defense Force (SDF). The offense carries a maximum penalty of 15 or 20 years. Mr. Al-Madioum made a first appearance after he arrived in the United States on September 16, 2020 and now he will have his first detention hearing.

1

## ARGUMENT

Title 18 U.S.C. § 3142(g) governs the factors the Court shall consider when determining release or the detention of a person charged with an offense. In part, the statute states the following:

"The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including-
        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

I.      THE FACTORS SUPPORT RELEASE

1.  **Nature of the offense and Weight of the Evidence**

Mr. Al-Madioum has been charged with one count of Providing Material Support to a Designated Foreign Terrorist Organization pursuant to 18 U.S.C. § 2339B(a)(1). It is alleged that Mr. Al-Madioum provided himself to ISIS from July 2015 through March 15, 2019 – the day he self-surrendered to the Syrian Defense Force (SDF). The offense carries a maximum penalty of 15 or 20 years. Complete discovery has not yet been provided to counsel as it is anticipated the case will be designated as complex, therefore extending the discovery deadlines.

In two documents reviewed by counsel and by listening to interviews given by Mr. Al-Madioum to the press, it appears that Mr. Al-Madioum was "recruited" to join ISIS with the belief he would be helping others. Further reports indicate that he was going to train to be a doctor.  It is noted in the Bond Report that a reason not to release Mr. Al-Madioum is because the offense involves "violence and weapons." However, counsel has not been provided documentation to support the allegation.  Counsel has not seen evidence to suggest that Mr. Al-Madioum was a fighter for ISIS. News interviews suggest that he was indeed training to be a doctor. In a NPR interview from December 2019, Mr. Al-Madioum is quoted as saying he "was never a fighter, but studied medicine under ISIS."[1] It

---

[1] https://www.npr.org/2019/12/08/786039731/visiting-imprisoned-isis-fighters

is also believed that Mr. Al-Madioum self-surrendered to the Syrian Defense Force in March 2019 – leaving the criminal activity of his own free will. There is no indication that Mr. Al-Madioum committed terrorism acts in the United States or has any intention of doing so.

## 2. History of Al-Madioum

### A. History and Characteristics of Al-Madioum

Mr. Al-Madioum has lived in Minnesota since he was eight years old. He was raised by both parents who currently reside in the metro area with their other two sons. Both of his parents are employed. Mr. Al-Madioum graduated from high school within the metro area. Later he went to college and studied engineering. In a NY Times article Mr. Al-Madioum is reported to that he worked at Jamba Juice in high school. He had best friends that were different religions, one being an atheist and the other a Christian. He further mentions he was studying engineering before he left and hoped to study medicine in Syria. The article discusses his lost limb (he is missing his right arm), the death of his wife, as well as his missing sons. "I made a mistake," he said. "I'll admit it. I'll admit it 1,000 times." [2]

_____

[2] https://www.nytimes.com/2019/10/23/world/middleeast/what-is-going-to-happen-to-us-inside-isis-prison-children-ask-their-fate.html

Mr. Al-Madioum's father told the Probation Officer that Mr. Al-Madioum is welcome to stay at the family home. His father also reported that he assisted the FBI as much as he could while his son was not in the United States. For example, the family reported their son missing in 2016. The family gave consent to search the family home and drew a map of the home for agents. The family provided updated information until they obtained legal representation.  The family has traveled to Morocco and Toronto since 2015, and each time they returned home to Minnesota. Mr. Al-Madioum's wife died in Syria and he has no idea where his two children are or even if they are alive. He has no reason to travel. He told news outlets he wanted to come back to the United States and knew he could face prison.

       i.      Drug/Alcohol Use

There is no indication that Mr. Al-Madioum has a drug problem. Seven years ago, he used marijuana. (See Bond Report). This is one of the reasons Probation finds Mr. Al-Madioum to be a danger to the community. Mr. Al-Madioum self-reported his use was seven years ago; there is no suggestion that there is recent use.

       ii.     Medical & Mental Health

Mr. Al-Madioum was injured during air strikes in Syria. Both of his legs are severely damaged as well as his left foot. His right arm is missing. He has severe nerve damage and is prescribed Lyrica daily. His ability to move around is limited

as evidenced by the photographs of his injuries below. This is important to note as

counsel is requesting GPS monitoring.



The Bond Report suggests that Mr. Al-Madioum's self-reporting of possible

PTSD makes him dangerous. The best resolution for that concern is to order a

mental health evaluation and follow the recommendation. In prior terrorism cases,

defendants have been ordered to mental therapy. There are therapists that contract

with the United States Probation Office and have been trained in this very issue

and defendants with terrorism convictions.

### iii.    Employment and School

As stated earlier, Mr. Al-Madioum is a high school graduate with some college. He has previously worked in the fast-food industry and worked with children with special needs. The family provided counsel with paystub.



## B. Criminal History and Supervision

Mr. Al-Madioum has no prior criminal history. He has never been in trouble. As such he is not under current supervision.

### 3.  No Danger to the Community

The United States Probation Officers in Minnesota are trained to supervise alleged offenders like Mr. Al-Madioum. They were trained by Daniel Koehler, a German de-radicalization expert, who was relied upon heavily in the last large scale terrorism case in Minnesota. During a 2016 Federal terrorism sentencing hearing, the District Court stated "that's why I've had you train our probation officers…I want to make sure that my probation officers are prepared to handle them when they come into our community so our community is safe."  [3] The Probation Officers in the District of Minnesota are trained and well qualified to handle someone alleged to have committed a terrorism act in Syria.

As the Court may already know, it is alleged that Mr. Al-Madioum was communicating with an ISIS recruiter via Twitter. To alleviate any concerns about Mr. Al-Madioum and his use of the internet, the Court can do two things. First, the Court can forbid the use of all electronics that have the ability to connect to the internet. The family has computers and smart phones in their home. They are password protected. The family has no objection to a computer monitoring program being placed on any of the devices. Second, the Court can forbid the use of social media by Mr. Al-Madioum.

---

[3] *United States v. Abdullahi Mohamud Yusuf*, Crim. No. 15-46 (MJD). Evidentiary Hearing from September 20, 2016. Page 65.

The government may allege, and the bond report states, that Mr. Al-Madioum's use of a false name indicates he is a risk to flee. That is simply not the case. Mr. Al-Madioum was housed in two different Syrian prison since March 2019. The use of the false name came when he "registered" at the prisons run by the Syrian Defense Forces. In September 2019, a news crew from CBS went to see Mr. Al-Madioum in prison. The news clip showed the conditions of the prisons. It was the first time cameras were allowed in the prison. Below is a screenshot from the 3-minute news clip. [4]



Why is this important? A May 11, 2019 report by the New York Times outlined the human suffering and torture inside the prisons.[5] At the same time,

---

[4] https://www.cbsnews.com/news/american-man-inside-a-syrian-prison-says-he-was-recruited-to-isis-online-2019-09-17/

[5] https://www.nytimes.com/2019/05/11/world/middleeast/syria-torture-prisons.html

President Trump announced that he was pulling over 2000 American troops from Syria. For Mr. Al-Madioum to state his real name and US citizenship may have gotten him killed or physically harmed. He eventually told the guards who he was and agreed to do "media" for the prisons. He gave interviews with CBS News, the Independent, NPR and other news outlets. All interviews were within the earshot and under the eyes of the guards. In one interview, it is alleged he told the reporter he made propaganda videos. There is no evidence to support that claim. What is clear from his interviews is that he wanted to come back to the United States and knew he would be facing a possible 15-year prison sentence.

## CONCLUSION

While every case carries risks of release, those risks can be mitigated by conditions short of full detention, as contemplated by the Bail Reform Act. *See* 18 U.S.C. § 3142(c)(1)(B) (mandating release "subject to the least restrictive condition . . . that such judicial officer will reasonably assure the appearance of the person as required and the safety of any other person and the community"). Mr. Al-Madioum has wanted to come back to the United States. He self-surrendered in Syria in 2019. His family supported his return by assisting the FBI. He has no travel documents to fly out of the country even if he wanted to. A GPS monitoring system will provide extra assurances he will not flee from his home. Counsel is proposing

a 24-hour lockdown at this home unless there is a scheduled court appearance or there is prior Court approval.

Mr. Al-Madioum's release on GPS-based monitoring with conditions that restrict his freedom of movement to only participate in court appearances, no social media use, and living at his parent's home will reasonably assure the safety of the community and his reappearance. The Probation Officers have been trained by an expert to supervise defendants with terrorism charges/convictions. Those skills should be put to use in this case. Mr. Al-Madioum's parents are willing to be third party custodians for their son. They wanted their son home. Minnesota is their home. They will do whatever it takes to make sure he stays in their home unless they are told otherwise by the Court. For the reasons set forth above, Mr. Al-Madioum respectfully requests the Court release him with strict conditions.

Dated: September 29, 2020                    Respectfully submitted,

                                             s/ Manny K. Atwal

                                             Manny K. Atwal
                                             Attorney ID No. 282029
                                             Attorney for Mr. Al-Madioum
                                             107 U.S. Courthouse
                                             300 South Fourth Street
                                             Minneapolis, MN 55415