UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

--------------------------------------------------------------
                             )  COURT FILE
UNITED STATES of AMERICA,     )  NO. 20-CR-196 (ADM/BRT)
                             )
            Plaintiff,        )
                             )            **VIA**
        vs.                   )  **ZoomGov VIDEO CONFERENCE**
                             )
ABDELHAMID AL-MADIOUM,         )  Courtroom 13 West
                             )  Wednesday, January 13, 2021
            Defendant.        )  Minneapolis, Minnesota
                             )  1:30 P.M.
--------------------------------------------------------------


**C H A N G E   O F   P L E A**

BEFORE THE HONORABLE ANN D. MONTGOMERY
SENIOR UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S :**

For the Government:    **OFFICE OF THE U.S. ATTORNEY**
                       By:  ANDREW R. WINTER
                            DANIELLE ROSBOROUGH (DOJ)
                            Assistant U.S. Attorneys
                       600 United States Courthouse
                       300 South Fourth Street
                       Minneapolis, Minnesota  55415


For the Defendant:     **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
                       By:  MANVIR K. ATWAL
                            First Assistant Defender
                       107 United States Courthouse
                       300 South Fourth Street
                       Minneapolis, Minnesota  55415


**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - United States District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota  55101
651.848.1224

```
 1          (1:30 p.m.)

 2                    P R O C E E D I N G S

 3                       IN OPEN COURT

 4               ( VIA ZoomGov VIDEO CONFERENCE )

 5          (Defendant present)

 6               THE CLERK:  The United States District Court for

 7     the District Court of Minnesota is now in session, the

 8     Honorable Ann D. Montgomery is presiding.  The case before

 9     the Court is the United States vs. Abdelhamid Al-Madioum.

10               Counsel, please note your appearances for the

11     record.

12               MR. WINTER:  Good morning, Your Honor -- good

13     afternoon.  Andrew Winter appearing on behalf of the United

14     States.

15               THE COURT:  It's my understanding we have an

16     appearance by a DOJ attorney.  If you would please state

17     your appearance for the record.

18               MS. ROSBOROUGH:  Yes.  Good afternoon, Your Honor.

19     Danielle Rosborough on behalf of the United States.

20               THE COURT:  Good afternoon.

21               And Ms. Atwal?  Hello.

22               MS. ATWAL:  Good afternoon, Your Honor.  Manny

23     Atwal from the Federal Defender's Office.  I'm here on

24     behalf of Mr. Al-Madioum, who is present by video.

25               THE COURT:  All right.  We have also present my
```

1    court reporter -- for the day, at least -- Mr. Tim Willette,

2    who is keeping his hands on the machine and recording the

3    proceedings, and I see present as well from the United

4    States Probation Office Leah Heino, as well as Brian James.

5            I think the first thing we should make sure is

6    that we can all hear each other and that we can see all of

7    the appropriate individuals.

8            Mr. Al-Madioum, have you had an opportunity to

9    listen to the proceedings and hear from each of the voices

10   as we've stated who we are?

11           THE DEFENDANT:  Yes, I have, Your Honor.

12           THE COURT:  And can you see everybody?  You should

13   be able to see I think eight boxes of people.  Is that what

14   you have in front of you?

15           THE DEFENDANT:  I have seven.

16           THE COURT:  Okay.

17           THE DEFENDANT:  And myself would be eight.

18           THE COURT:  Okay.  That's right.  You are the

19   eighth person.  And it's my understanding there may be --

20   your parents may be able to observe this too and I'm not

21   sure if we will see them, but they may be able to tap into

22   this as well.

23           You have signed, Mr. Al-Madioum, an order -- or

24   agreement to proceed by way of this video presentation.  I'm

25   an old judge and I'm not used to doing it in this way.  I

1    much prefer being in the courtroom, but this is the way,

2    obviously, that it's possible to get a case moving and not

3    just be stuck during this COVID epidemic.

4         Ms. Atwal has signed an order, proposed an order

5    that tells me that she's gone over this with you and that

6    you understand this and are agreeable to proceed in this

7    fashion.  I just want to make sure that that is the reality.

8    I trust Ms. Atwal, but I need to hear it from you yourself.

9         THE DEFENDANT:  That is correct, Your Honor.

10        THE COURT:  All right.  Do you have any questions

11   about proceeding in that fashion?

12        THE DEFENDANT:  No, ma'am.

13        THE COURT:  Okay.  If at any point as we proceed

14   along there becomes a problem with the audio link, you need

15   to wave your hands or give me a basketball timeout signal or

16   something so that we get reconnected, and I've found that

17   that happens occasionally in these hearings and we freeze

18   up.

19        Will you do that for me?

20        THE DEFENDANT:  I will, ma'am.

21        THE COURT:  All right.  And the same is true of

22   any of you other participants as we proceed along.  If there

23   are technical difficulties encountered, I'd like to make

24   sure you let me know as expeditiously as possible.  You can

25   call by phone Ms. Holden, who is listening in to these

1    proceedings, if there becomes a problem, or send her an

2    email, of course.

3          Mr. Winter, are you satisfied that I have

4    accomplished the appropriate waiver under the CARES Act?

5          MR. WINTER:  I am, Your Honor.  Thank you.

6          THE COURT:  And, Ms. Atwal, do you likewise feel

7    that we've covered the necessary bases with regard to the

8    CARES Act?

9          MS. ATWAL:  I do, Your Honor.

10         THE COURT:  All right.  I'm going to proceed ahead

11   then with you, Mr. Al-Madioum, with regard to some

12   specifics.  I want to learn a little bit about you and about

13   your background as we proceed.

14         First of all, what is your age?

15         THE DEFENDANT:  My age is 24 years old.

16         THE COURT:  Okay.  Can you tell me a little bit

17   briefly about your education?  Did you go to high school

18   here in the United States?

19         THE DEFENDANT:  Yeah.  I finished high school and

20   I got my diploma and I started a little bit of college, Your

21   Honor.

22         THE COURT:  All right.  And where did you go to

23   college?

24         THE DEFENDANT:  At Normandale.

25         THE COURT:  Okay.  Some of the questions like the

1    next one seem very obvious, but we do have to have the

2    reality reflected here and stated for purposes of the

3    record.

4           It sounds to me like you're very competent in the

5    English language and clearly as somebody who attended high

6    school in the United States, I would expect that you are.

7    Is that true?

8           THE DEFENDANT:  That is true, ma'am.

9           THE COURT:  All right.  Your --

10          THE CLERK:  Judge?

11          THE COURT:  Yes.

12          THE CLERK:  I'm sorry to interrupt.  You might

13   want to swear the defendant.

14          THE COURT:  Oh.  That's very good that you brought

15   that to my attention.

16          Would you raise your right hand, please?

17

18        **ABDELHAMID AL-MADIOUM, DEFENDANT, SWORN**

19          THE DEFENDANT:  Yes, I do, ma'am.

20          THE COURT:  Thank you very much, and thank you,

21   Ms. Holden, for the reminder.

22                    **E X A M I N A T I O N**

23   BY THE COURT:

24   Q.  Mr. Al-Madioum, you've had as your counsel Ms. Atwal

25   appointed to represent you.  Have you had enough time to

1    talk to her about your case?

2    A.  I have, Your Honor.

3    Q.  Good.  And are you satisfied with her representation of

4    you?

5    A.  Yes, I'm very satisfied.

6    Q.  All right.  I think most of all her clients say that and

7    that's good to hear.

8              This is another one of these obvious questions,

9    but have you consumed any drugs or alcohol in the last 24

10   hours?

11   A.  No.  No, ma'am.

12   Q.  And are you subject to any drug dependencies or narcotic

13   addictions?

14   A.  No, ma'am.

15   Q.  Are you currently taking any medications?

16   A.  No, I'm not, Your Honor.

17   Q.  Are you under the care of any physician, psychiatrist,

18   psychologist, for any ongoing course of treatment?

19   A.  No, ma'am.

20   Q.  All right.  The intent of these questions is to make

21   sure that you are competent, as we say, to proceed.  I want

22   to make sure that today's proceedings and the decision to

23   plead guilty is what you're focusing on and that there isn't

24   any other distraction or some other problem that you're

25   having that keeps your full attention from being on this

1    matter.

2              So, is your mind free and clear today and your

3    focus on pleading guilty?

4    A.  It is, ma'am.

5    Q.  Okay.  Is there any other day that would be a better day

6    than today to plead guilty?  Is everything working okay?

7    Sometimes I've found out a defendant had a tooth ache or

8    something, got some bad news or something, just before the

9    hearing, but I want to make sure that this is on okay day

10   for you to proceed.

11   A.  Thank you, Your Honor.  I believe today is the day.

12   Q.  Okay.  Good as any day, I take it, right?

13   A.  Yeah.

14   Q.  Okay.  I think we can all agree there's probably never a

15   good day to plead guilty, but this will work.

16             All right.  I'm going to go over your

17   constitutional rights now with you.  I am confident that

18   Ms. Atwal has already done so and that you're fully aware of

19   these rights, but I need to make a record of this and be

20   doubly sure, because this is a big decision and a big deal

21   that we're doing this.

22             Do you understand?

23   A.  I do, Your Honor.

24   Q.  Okay.  You have a right to a jury trial and we are at

25   the spot where the roads split between pleading guilty and

1    going to trial.  If you chose the other road and went to

2    trial, you would be entitled to have a jury trial.  We would

3    impanel a group of jurors.  Twelve of them would deliberate

4    and they would unanimously have to reach a verdict before

5    you could be convicted of any offense.

6          Do you understand you're giving up the right to a

7    jury trial and the ensurance of a unanimous verdict?

8    A.  I do, ma'am.

9    Q.  The standard or the level of proof there must be in a

10   criminal case is proof beyond a reasonable doubt.  That's a

11   constitutional right.  And by pleading guilty, you also

12   waive, or forfeit, or give up the right to require the

13   Government to prove your case beyond a reasonable doubt.

14         Are you aware of that?

15   A.  I am, ma'am.

16   Q.  And do you with knowledge give up that right?

17   A.  I do, Your Honor.

18   Q.  All right.  You're protected like every defendant by the

19   presumption of innocence.  It's a very important part of our

20   Constitution.  It has a couple ramifications or ways that it

21   plays out in the courtroom.

22         It means, among other things, that Mr. Winter and

23   Ms. Rosborough could not call you as a witness if the case

24   were to be tried.  You could remain silent.  Not only could

25   you not be forced to testify; no one could make any

1    arguments or claim in any way that you were guilty because

2    you remained silent.

3              Do you understand that by pleading guilty you give

4    up that right as well?

5    A.  I do, Your Honor.

6    Q.  Okay.  That's an important one.  They're all important,

7    but is there anything you'd like to ask me about that

8    presumption of innocence?

9    A.  No, ma'am.  Me and Ms. Atwal went through that.  Thank

10   you.

11   Q.  Very good.  You're entitled under a statute -- it isn't

12   actually part of the Constitution, but under a statute -- to

13   what's called a speedy trial.  That's a little complex right

14   now because it's hard to hold trials, but I want to make

15   sure that you do understand that we're going to proceed

16   without giving you the benefit of a speedy trial because

17   you're saying you don't want any trial at all.

18              Do you understand that?

19   A.  I do, ma'am.

20   Q.  Okay.  By pleading guilty now at this point in the

21   process, you also give up the right for Ms. Atwal to bring

22   any motions, pretrial motions, on your behalf as it might

23   relate to your arrest, or the proceedings, or what evidence

24   should be disclosed at trial.  There are a whole number of

25   things which could be the subject of a pretrial motion, but

 1    because you're pleading guilty, we're going to go forward

 2    and talk about sentencing issues rather than whether or not

 3    you're guilty after today without the benefit of any further

 4    pretrial motions or review of any magistrate judge rulings

 5    in your case.

 6              Are you aware of that?

 7    A.  I am, ma'am.

 8    Q.  And do you agree to be bound by that as part of your

 9    plea agreement in this case?

10    A.  I do, Your Honor.

11    Q.  Okay.  We talked a little bit about trial and the

12    presumption of innocence.  Part of the benefit of the

13    presumption of innocence is that not only do you not have to

14    testify, you can remain silent, but you can call witnesses.

15    Ms. Atwal would have the ability to use the subpoena power

16    of the Court and call witnesses to testify on your behalf.

17              Do you know you're giving up the right to confront

18    or to call witnesses on your behalf?

19    A.  I do, ma'am.

20    Q.  Okay.  And I jumped ahead there by saying "confront" and

21    that's also a part of the trial rights.  You'd have the

22    right at trial to have your attorney confront,

23    cross-examine -- that's just a lawyerly way of saying ask

24    questions of -- all of the witnesses in your case.  Because

25    there isn't going to be a trial, you give up the benefits of

1    cross-examining and testing the Government's case through a

2    defense.

3            Do you understand that?

4    A.  I do, ma'am.

5    Q.  We talked about not testifying, but the flip side of

6    that is also true.  You could testify.  If we went to trial,

7    you could take the witness stand, tell the jury your side of

8    the case, but by pleading guilty you give up the right to

9    testify.

10           Do you know that and do you willingly give up that

11   right?

12   A.  I do, ma'am.

13   Q.  Is anybody threatening you or forcing you to plead

14   guilty?

15   A.  No, ma'am.  I'm doing it from my own free will.

16   Q.  Okay.  And have there been any promises made to you to

17   try to get you to plead guilty that aren't on paper and in

18   front of the Court?

19   A.  No, ma'am.

20   Q.  Is everybody playing above board and straight with you

21   as far as you can tell?

22   A.  Yes, ma'am, of course.

23   Q.  Well, I hope so.  You seem to be following just fine and

24   from all I can tell you're certainly on track here.

25           Is there anything at all you'd like to ask me

1   about what your constitutional rights are?

2   A.  No, Your Honor.  Me and Ms. Atwal went through my

3   constitutional rights and we believe it is correct that I

4   would waive those rights and plead guilty today.

5   Q.  Okay.  Very good.

6           THE COURT:  Mr. Winter, Ms. Rosborough, are you

7   satisfied that I've covered the bases with regard to the

8   defendant's constitutional rights?

9           MR. WINTER:  Yes, Your Honor.

10  BY THE COURT:

11  Q.  The next thing I'm going to do is go over with you the

12  plea agreement and I'm hoping you have a copy of that there

13  in front of you.

14  A.  I do, ma'am.

15  Q.  Okay.  The copy I have seems to bear some signatures and

16  I'm thinking the middle one of those is yours, is that true?

17  A.  Yes, it is, ma'am.

18          THE COURT:  Okay.  Mr. Winter, do you affirm that

19  your signature appears on the eight-page document, the plea

20  agreement in this case?

21          MR. WINTER:  I do, Your Honor.

22          THE COURT:  And likewise, Ms. Atwal, that would

23  leave the third signature as yours, even though I don't

24  recognize it by the scribble, but I take it that is in fact

25  your signature.

```
 1              MS. ATWAL:  It is, Your Honor.

 2              THE COURT:  Okay.  Do I need to send you to a

 3      penmanship improvement course in the near future?

 4              MS. ATWAL:  Probably.

 5          (Laughter)

 6              THE COURT:  Okay.  I think I'll be next to you in

 7      the class when it convenes.

 8      BY THE COURT:

 9      Q.  All right.  That aside, let's look at the plea agreement

10      together here.

11              It says, Mr. Al-Madioum, that you are pleading

12      guilty as a result of an agreement that you've made with the

13      United States Attorney's Office here in the District of

14      Minnesota.  I want to make sure that you understand that

15      this agreement doesn't bind any other United States

16      Attorney's Office or any other prosecuting agency or

17      prosecutors at all, just the U.S. Attorney's Office in

18      Minnesota.

19              Is that your understanding?

20      A.  It is, ma'am.

21      Q.  Okay.  Then it says that you have decided to plead

22      guilty to Count 1 of the indictment.  I think there is only

23      one count.  In exchange for that, the Government agrees not

24      to charge you with any additional crimes based on

25      information they know of as of today's date.
```

1      Is that your understanding as well?

2   A.   That is, Your Honor.

3   Q.   Paragraph 2 at the bottom of page 1 and all of page 2

4   down to where it says "Statutory Penalties" are a

5   description of what's called the factual basis; that is,

6   what happened here with regard to where you were in 2014 and

7   2015, I guess.

8      Those are specific questions about the underlying

9   matter and I think those are better asked by the Government,

10  so I'm going to skip over that part and we'll let them ask

11  the questions about the specifics of the charge to which

12  you're pleading guilty in a few minutes, if that's okay with

13  you.

14  A.   That is okay with me, ma'am.  Thank you.

15  Q.   We'll come back to that then.

16     Paragraph 3 I'm sure has been the subject of a lot

17  of discussion with your attorney because it lists the

18  maximum penalty for your offense, and it is stated there, of

19  course, the 20-year imprisonment term, a supervised release

20  term of life, a criminal fine of up to $250,000, and a

21  mandatory special assessment of $100, which is payable to

22  the court at the time of sentencing.

23     Do you understand that each one of those four

24  things there is a part of the maximum penalty for this

25  offense?

```
 1    A.  I do, ma'am.

 2    Q.  Okay.  Turning to page 3, paragraph 4, it talks about

 3    that you're giving up pretrial motions, and paragraph 5 is

 4    the waiver of the constitutional rights.  I think I've

 5    already covered that with you in the earlier question, but

 6    I'm happy to go back over it if you'd like to, or if you

 7    want me to skip ahead, we can do that too, whatever you

 8    want.

 9    A.  We can skip ahead, Your Honor.  Thank you.

10    Q.  Okay.  So let's go to the top of page 4 and paragraph 6.

11    It begins by talking about supervised release.  I'm sure

12    you're far less worried about supervised release and the

13    term after your imprisonment than you are about the

14    imprisonment part.  But it is important that even as soon as

15    today you recognize that whenever you're released from

16    prison, you will be under the supervision of the United

17    States Probation Office for a term that I'll decide the day

18    I sentence you.

19          Are you aware and agree to that?

20    A.  I do, ma'am.  I agree to that.

21    Q.  All right.  Paragraph 7 begins a long discussion of how

22    the sentencing guidelines apply to you.

23          I want to make sure that you understand right here

24    from this early stage of our discussions that I haven't been

25    a part of the negotiations here.  A judge is separate and
```

1   independent from that.  You might have noticed I don't sign

2   the plea agreement and so I haven't been a part of

3   determining these numbers.

4          I know both Mr. Winter and Ms. Atwal well after

5   many years of having them both practice in front of me and I

6   have lots of confidence that my reading of how the

7   guidelines apply to you and theirs is going to be very

8   similar, but it's possible it might be different, and if

9   that were to be the case, you're stuck with how I analyze

10  the guidelines rather than how they do.

11         Do you understand that?

12  A.  I do, ma'am.

13  Q.  Okay.  Any questions about that at all?

14  A.  No, ma'am.  Thank you.

15  Q.  Okay.  Well, let's go through those guidelines.

16         I call the guidelines a framework for analysis.

17  It's sort of a step-by-step way with a numerical formula

18  that leads us to a suggested sentence.  Some parts are more

19  rigid or unbending than others, but that's kind of what

20  we're going to talk about as we go through here.

21         It says that the base offense level for this

22  particular crime that you're pleading guilty to starts with

23  what's called a base offense level of 26, so that's the

24  starting point.

25         Are you aware of that?

1    A.  I am, ma'am.

2    Q.  Then it says in subparagraph (b) that because this

3    involved the provision of material support or resources with

4    the intent, knowledge, or reason to believe that they were

5    going to be used to commit or assist in the commission of a

6    violent act, two points must be added to that 26, which

7    would move us up to 28.

8           Is that your understanding?

9    A.  That is, ma'am.

10   Q.  Okay.  Then there is a 12-level adjustment that it says

11   applies and we'll talk about that more specifically in a few

12   minutes, but do you understand that there is an agreement

13   here that a 12-level enhancement or adjustment applies in

14   your case?

15   A.  Yes, ma'am, I understand that.

16   Q.  Okay.  Subparagraph (d) is a little bit of good news for

17   you.  It says that there's an agreement here that if you

18   provide truthful and complete disclosures to the Probation

19   Office as they prepare the presentence investigation and

20   that you testify truthfully today at the change of plea, as

21   well as at your sentencing hearing, and you comply with this

22   agreement and that you stay out of trouble -- that's what's

23   called undertaking no acts inconsistent with the acceptance

24   of responsibility -- if you do those things, the Government

25   is going to recommend that I give you ultimately a

1    three-point deduction because it would show you're accepting

2    your personal responsibility in this case.

3              Do you understand that?

4    A.  I do, ma'am.  That's why I'm here.

5    Q.  Okay.  Excellent.

6              Turning to the top of page 5, it says that they

7    agree that -- this is just before the sentence before

8    subparagraph (e) -- the parties agree that the facts of this

9    case don't support any other Chapter 3 or Chapter 4

10   adjustments, so that's kind of where we leave it for the

11   time being.

12             Do you understand that?

13   A.  I do, ma'am.

14   Q.  When we make those additions and add that 12 points I

15   referred to a few minutes ago, that brings us up to level

16   37.

17             Do you understand that?

18   A.  I do, ma'am.

19   Q.  And because this particular enhancement applies that

20   we've been talking about because of the nature of the crime,

21   it says that the guidelines place you in what's called

22   Criminal History Category VI.  That's the highest category.

23             Are you aware of that?

24   A.  I am, Your Honor.

25   Q.  So that would state -- and the guidelines and the

1    parties agree that that would be -- the guideline range

2    would be 240 months' imprisonment, the statutory maximum

3    sentence under the guidelines.

4           Are you aware of that?

5    A.  I am, ma'am.

6    Q.  The fine range that fits with that guideline level is

7    $40,00 to $400,000, and that there isn't any agreement in

8    this case if a fine is imposed how much it might be.

9           Do you agree that that's a part of your plea

10   agreement and you're bound by that?

11   A.  That is, ma'am.

12   Q.  The supervised release period that I mentioned a few

13   minutes ago in your case could be anything between five

14   years to life, and it says the Government may seek a

15   lifetime term of supervised release in your case, keep tabs

16   on you.

17          Do you understand that?

18   A.  Yes, I do, ma'am.

19   Q.  And then it says in paragraph (j) that the defense is

20   reserving the right to argue additional grounds for

21   departure or variance from the ultimate guideline

22   determination in this case.  What that does is it leaves the

23   door open for Ms. Atwal to argue that you don't fit within

24   these guidelines or there might be reasons that I should

25   hear has to why the 240 months isn't applicable in your

1    case.

2              Do you understand that?

3    A.  I do, ma'am.

4    Q.  Paragraph 8 is something I've probably already touched

5    upon when I talked about my independence and not being bound

6    by this plea agreement.  I always call that paragraph the

7    "no guarantees" paragraph.  It talks about the discretion of

8    the Court.  I'll apply the guidelines as I see them.  I can

9    promise that I will be as fair with you as possible within

10   the confines of the law and using my best judgment.

11             Do you understand that?

12   A.  Yes, I do, ma'am, and thank you.

13   Q.  Okay.  Paragraph 9 on page 6 means that there's no

14   agreement as to the recommended sentence here.  You

15   acknowledge and say that you understand that the Government

16   may well ask for a sentence of the 240 months.  You're free

17   and your counsel are free to argue for whatever sentence

18   they deem appropriate.  If I decide not to accept the

19   recommendation of the parties, you don't have any recourse.

20   You can't -- you're stuck, basically -- I'll be blunt with

21   you -- with my decision.  You can't withdraw from your

22   guilty plea and say, "Okay, Judge Montgomery, if that's how

23   you feel about it, I want to start all over."  No, that

24   can't happen.  You are stuck with my decision in this case.

25             Do you understand that?

1    A.  I do, ma'am.

2    Q.  Okay.  The special assessment -- and probably the least

3    of your worries at this point, but there's $100 that is

4    required of every felony count of conviction in federal

5    court, and you'll be required to pay that or make

6    arrangements to pay that at the time of sentencing.

7            Do you understand that?

8    A.  I do, ma'am.

9    Q.  Paragraph 11 says you're giving up your right to appeal

10   any non-jurisdictional issues.  That says that the appellate

11   waiver is not limited to your right to appeal guilt or

12   innocence and the constitutionality of the statutes to which

13   you're pleading guilty, but you do agree that excluded from

14   the waiver is an appeal by the defendant of the substantive

15   reasonableness of the term of imprisonment.  So that

16   basically is saying that you are not going to have another

17   judge check my homework about your sentence, but the bigger,

18   broader issues are preserved.

19           Do you understand that?

20   A.  I do, ma'am.

21   Q.  Okay.  You're also waiving or giving up the right to

22   petition under what's called Section 2255 -- that's a

23   post-conviction relief -- on any ground other than a claim

24   of the ineffective assistance of counsel.  That would be

25   problems with your lawyer, Ms. Atwal.  You are always free

1    to check the effectiveness of your counsel, but you're

2    giving up the rest of the appellate issues.

3              Are you aware of that?

4    A.  I am, Your Honor.

5    Q.  Paragraph 12 on the top of page 7 talks about

6    forfeiture, and the Government reserves its right to proceed

7    against any of your assets -- that would be real or personal

8    property -- as a part of this plea agreement or if there are

9    proceeds that are traceable to your crime.

10             Are you aware of that?

11   A.  Yes, I am, Your Honor.

12   Q.  And you agree to be bound by that as well?

13   A.  I do, Your Honor.

14   Q.  Paragraph 13 relates to something called the Freedom of

15   Information Act and the Privacy Act.  There are various

16   defendants that want to go back and check the whole

17   Government investigation, get access to a lot of Government

18   records and proceed with their own investigation.  You're

19   giving up the right to do that.  The Government puts that

20   provision in the plea agreements because they want to move

21   on to other cases and not be dealing with you and your case

22   after the conclusion of your prosecution.

23             Are you aware of that and do you agree to be bound

24   by that part of your agreement?

25   A.  Yes, I do.  I agree to be bound.

1    Q.  Okay.  And then it says in paragraph 14 that there are

2    possible additional consequences as a result of this

3    conviction.  That is, you could be assessed the costs of the

4    prosecution and experience additional consequences, perhaps

5    including removal from the United States, the loss of the

6    right to carry firearms and the right to possess ammunition,

7    the right to vote and the right to hold public office, which

8    are all possible as a result of your conviction.

9            Do you agree to be bound by that part of your plea

10   agreement?

11   A.  I do, Judge Montgomery.

12   Q.  Finally, paragraph 15 says that this is the complete

13   agreement; that is, this is the whole deal.  I remember I

14   asked you earlier if there were any side deals or secret

15   understandings and you pretty much told me everything is out

16   in the open and there aren't any secret deals here.

17           Does that remain the case?

18   A.  It does, Your Honor.

19   Q.  Well, you have answered all the questions and I know

20   it's easy to just keep agreeing with me and saying "Yes,"

21   "Yes," "Yes," but I want to make sure that there's no area

22   of the agreement that's fuzzy or unclear or that you'd like

23   to have me explain to you.

24           Is there anything you'd like me to go back over?

25   A.  Thank you, Your Honor.  The agreement is crystal clear

1    to me.

2    Q.   Okay.  You seem like a bright young man and I take your

3    word on that.

4              THE COURT:  Ms. Atwal, with your permission, I

5    will arraign your client now on Count 1.

6              MS. ATWAL:  That's fine, Your Honor.  Thank you.

7              THE COURT:  All right.  Mr. Al-Madioum, the United

8    States Grand Jury has charged that from in or about

9    July 8th, 2015, through on or about March 15th of 2019,

10   within the State and District of Minnesota, and elsewhere,

11   the defendant -- yourself -- Abdelhamid Al-Madioum, did

12   knowingly provide, and attempt to provide, material support

13   and resources, as that term is defined in Title 18, United

14   States Code, Section 2339A(b)(1), including personnel

15   (namely himself) and services to a foreign terrorist

16   organization, to wit: The Islamic State of Iraq and al-Sham,

17   or ISIS, which at all relevant times has been designated by

18   the Secretary of State as a foreign terrorist organization

19   pursuant to Section 219 of the Immigration and Nationality

20   Act, knowing that ISIS was a designated foreign terrorist

21   organization, and knowing that ISIS had engaged in, and was

22   engaging in, terrorist activity and terrorism; all in

23   violation of Title 18, United States Code, Section

24   2339B(a)(1).

25              To that charge, which could be much more

1    succinctly stated as providing material support to a

2    designated foreign terrorist organization, what is your

3    plea?

4              THE DEFENDANT:  I plead guilty, Your Honor.

5              THE COURT:  Mr. Winter, I will defer to you to

6    establish the factual basis, please.

7              MR. WINTER:  Thank you, Your Honor.

8                    **E X A M I N A T I O N**

9    BY MR. WINTER:

10   Q.  Good afternoon, Mr. Al-Madioum.  Can you hear me okay?

11   A.  I can, Mr. Winter.

12   Q.  All right.  I'm going to refer you to the plea

13   agreement, paragraph 2, so flip back to page 1, and

14   hopefully I don't ask you any questions that will come as a

15   surprise.

16             Mr. Madioum, is it true that in 2014 you conducted

17   research and developed plans to join and eventually provide

18   material support and resources to ISIS?

19   A.  That is true, sir.

20   Q.  And then specifically on June 23rd of 2015, did you

21   leave the United States with your family to go to Morocco?

22   A.  That is true, sir.  Without the knowledge of my family

23   we went to -- I left Morocco to join ISIS.

24   Q.  Correct.  And we'll get to that, but the things that you

25   did here you did without your family's knowledge; is that

1    fair to say?

2    A.  That is true, sir.

3    Q.  Okay.  But when you left with your family, it was your

4    personal intention to then surreptitiously or secretly

5    travel from Morocco to Syria in order to join ISIS, is that

6    correct?

7    A.  That is correct, sir.

8    Q.  Again, specifically now on July 7th of 2015, did you use

9    a debit card to purchase a plane ticket so that you could

10   fly from Casablanca to Istanbul, Turkey?

11   A.  That is true, sir.

12   Q.  And did you also buy a visa to get into Turkey?

13   A.  I did, sir.

14   Q.  Then on the 8th of July, which would have been a day

15   later, did you actually take a flight from Casablanca to

16   Istanbul, Turkey?

17   A.  That is correct.  I did.

18   Q.  And once you were in Turkey, did you meet up with

19   members of ISIS who then helped you cross the border into

20   Syria?

21   A.  That is correct, sir.

22   Q.  Once you were in Syria, were you then able to actually

23   join ISIS as you had planned?

24   A.  That is correct, sir, yes.

25   Q.  And the first place that you went as a member of ISIS

1  was to Mosul, Iraq, is that correct?

2  A.  I did, sir, from the border directly to Mosul.

3  Q.  Now, in the following months in 2015, were you then

4  administratively enrolled into ISIS and you began to receive

5  military training from them, is that correct?

6  A.  That is correct, sir.

7  Q.  And a little further along you eventually were assigned

8  to a particular battalion within ISIS called Tariq

9  Bin-Ziyad, is that correct?

10  A.  That is correct, sir.

11  Q.  And that battalion is part of the Abu Mutaz al-Qurashi

12  Division of ISIS, is that true?

13  A.  That is true, Mr. Winter.

14  Q.  Okay.  And it was during that time that you served as a

15  soldier then for ISIS until the point in time when you were

16  injured while conducting some military activities on behalf

17  of ISIS, is that correct?

18  A.  That is correct, sir.  And I know I lied about that

19  before to the journalists who are fourth estate, but I came

20  here today to admit to that crime and, you know, face my

21  destiny that that's true, that I was a soldier of ISIS.

22  Q.  All right.  Thank you for passing that on.

23       Now, as you just admitted, you were injured while

24  you were conducting military activities on behalf of ISIS,

25  and that injury kind of put you in a position to not be able

1   to fight anymore; is that fair to say?

2   A.  That is fair, sir, yes.

3   Q.  But did you continue to receive a stipend, or money,

4   from ISIS until late 2018?

5   A.  That is correct, yes, I did.

6   Q.  And is it true that despite your injury you remained a

7   member of ISIS until you surrendered in 2019, is that right?

8   A.  That is correct, Mr. Winter.

9   Q.  And you specifically surrendered to the Syrian

10  Democratic Forces in or near Baghouz, Syria, is that

11  correct?

12  A.  Yes, sir.

13  Q.  And then you stayed in their custody until FBI agents

14  picked you up recently, is that right?

15  A.  That is true, sir.

16  Q.  Now, during the times relevant to the charge in the

17  indictment, did you know that ISIS was a designated

18  terrorist organization?

19  A.  I did, Mr. Winter.

20  Q.  And did you know that ISIS had engaged and was engaging

21  in terrorist activity or terrorism?

22  A.  I did, sir, yes.

23  Q.  Do you admit that you knew what you were doing -- from

24  the moment you left the United States and joined ISIS and

25  did all those things, did you know that what you were doing

1    was illegal under United States law?

2    A.  I did, sir.

3    Q.  And did you do all these things of your own free will,

4    voluntarily?

5    A.  Yes, I did.  It was through my own free will.

6    Q.  Okay.  So no one forced you to up and leave and join

7    ISIS and do the things you did, is that true?

8    A.  That is true.  There was no coercion or duress.

9    Q.  Thank you.

10           MR. WINTER:  Your Honor, I have no further

11   questions on the factual basis.

12           THE COURT:  Ms. Atwal, would you like to inquire

13   of your client at this time?

14           MS. ATWAL:  No, Your Honor.

15           THE COURT:  All right.

16           **F U R T H E R   E X A M I N A T I O N**

17   BY THE COURT:

18   Q.  Well, from all I can tell, Mr. Al-Madioum, you are being

19   very straightforward about this.  Is there any doubt in your

20   mind that you're guilty of this offense?

21   A.  No, ma'am.  I'm guilty of this offense.

22   Q.  You knew at the time this was something that was wrong,

23   at least in the view of the United States law, clearly?

24   A.  Yes, that's true, ma'am.

25   Q.  All right.

1    A.  And I came here today to own up to that.

2    Q.  All right.  Well, I'm prepared to accept your guilty

3    plea, but before I do so, I want to make sure that you

4    understand this is the last opportunity to choose to have a

5    trial.  This closes the door to whether or not you'll have a

6    trial.

7         Once I say I accept the plea here, then we will

8    move ahead to analysis of what the sentence should be and

9    learning more about you by way of the presentence

10   investigation and background, but this ends it with regard

11   to whether or not you ever have a jury trial of this

12   offense.

13        Knowing that, do you want me to accept your guilty

14   plea?

15   A.  I do, ma'am, and thank you for being thorough.

16   Q.  All right.  Well, this is a serious crime and it's going

17   to make a hard decision for me, I can tell, as I proceed,

18   but I'm glad you're stepping up to your responsibilities at

19   this point.

20        I do accept your guilty plea.  I will defer the

21   matter to the presentence investigation for -- the Probation

22   Office for the presentence investigation.  Cooperate with

23   them.  Give them as much information as you can about

24   yourself, because it'll help me make a better sentencing

25   decision the more I know about you, please.

1          THE COURT:  I'm going to set the date of

2     sentencing in this case for May 26th, May 26th of 2021 -- I

3     guess we're now in 2021 -- at 1:30 p.m., May 26th at

4     1:30 p.m.

5          Is there anything further from the Government at

6     this time, Mr. Winter or Ms. Rosborough?

7          MR. WINTER:  No, Your Honor.

8          THE COURT:  Ms. Atwal, have we covered what you

9     needed to have happen today?

10          MS. ATWAL:  Yes, Your Honor.

11          THE COURT:  All right.  At this point, Ms. Heino,

12     do you have what you need to proceed with the starting of

13     the presentence investigation?

14          MS. HEINO:  Yes, Your Honor.  I already have it

15     scheduled with Ms. Atwal.

16          THE COURT:  Excellent.  All right.  At this point

17     court will be in recess.

18          I will see you, Mr. Al-Madium -- and I'm so sorry

19     I have mispronounced your name.  I tried to get it

20     phonetically, but I -- there's a lot of letters in there in

21     a row.  I did my best, so --

22          THE DEFENDANT:  That's no problem, ma'am.

23          THE COURT:  All right.  Pronounce it once slowly

24     and clearly for me.  Al-Madium?

25          THE DEFENDANT:  Al-Madium.

1            THE COURT:  Al-Madium.  Okay, Al-Madium.  Thank

2    you.

3            THE DEFENDANT:  Thank you.

4            THE COURT:  We'll be in recess.

5            (Proceedings concluded at 2:17 p.m.)

6                    *      *      *      *

7

8

9                **C E R T I F I C A T E**

10

11

12       I, **TIMOTHY J. WILLETTE,** Official Court Reporter

13       for the United States District Court, do hereby

14       certify that the foregoing pages are a true and

15       accurate transcription of my shorthand notes,

16       taken in the aforementioned matter, to the best

17       of my skill and ability.

18

19                */s/ Timothy J. Willette*

20

21            **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
              Official Court Reporter - U.S. District Court
22    Warren E. Burger Federal Building & U.S. Courthouse
                316 North Robert Street - Suite 146
23                St. Paul, Minnesota  55101
                       651.848.1224

24

25