UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 20-196 (ADM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDELHAMID AL-MADIOUM,<br><br>Defendant. | GOVERNMENT'S REPLY TO DEFENDANT'S POSITION ON SENTENCING |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Andrew R. Winter, respectfully submits this reply to Defendant's Position on Sentencing at ECF Doc. 63. Defendant has argued for a downward variance based upon a variety of factors including, but not limited to, the need to avoid unwarranted sentencing disparities, the time he spent in foreign custody, the increase in his Criminal History Category as a result of the application of U.S.S.G. § 3A1.4, and his age. The government responds to each below.

1. <u>Alleged Sentencing Disparities</u>

Defendant argues that an abbreviated sentence in this case is justified to avoid unwarranted sentencing disparities. *See Defendant's Position on Sentencing*, ECF Doc. 63, ps. 31-36. The government disagrees. After considering the seriousness of Defendant's offense and his cooperation, the government's requested sentence of twelve years' imprisonment is consistent with the national sentencing pattern in similar cases.

Defendant has identified certain sentences for other defendants convicted of material support offenses (many of whom did not actually travel to ISIS-held territory abroad or serve as foreign fighters) that are scattered below the stipulated guidelines range that applies here, but that is neither surprising nor dispositive for the court's determination of the appropriate sentence in this case.[1] Numerous courts have recognized the need to impose the maximum or near maximum allowable period of custody for convictions under Section 2339B, involving the provision—and often only the attempted provision—of personnel (including oneself) to ISIS and other foreign terrorist organizations ("FTOs"):

> Mohamud Masood, 20-cr-76 (D. Minn.): Masood, a Pakistani medical researcher from Rochester, Minnesota, swore an oath of allegiance to ISIS then attempted to travel overseas to provide both combat and medical support to the FTO. He was arrested at an airport where he planned to fly to Los Angeles then board a ship to travel overseas. Masood pled guilty and was sentenced on August 25, 2023, to 18 years imprisonment.
>
> Romeo Langhorne, 19-cr-218 (M.D. Fla.): Langhorne directed an individual he believed to be an ISIS operative in the production of a video instructing on the making of an explosive. He pled guilty to attempt to provide material support to ISIS and was sentenced on July 7, 2022, to 20 years imprisonment.
>
> Kristopher Sean Matthews and Jaylyn Christopher Molina, 20-cr-488 (W.D. Tex.): Matthews and Molina conspired to provide material support to ISIS by administering an encrypted, members-only chat group for ISIS supporters, by spreading propaganda, and by disseminating firearm and explosives instructions. Matthews and Molina pled guilty and were sentenced on July 1, 2022, to 20 years and 18 years, respectively, for their offenses under Section 2339B.

---

[1] Defendant referenced the case of Warren Christopher Clark in his memorandum. *See* ECF Doc. 63, p. 17. The government credits Defendant with his truthful assistance in Clark's case, but it should be noted that Defendant's standby status as a witness in that case was the result of a potential request from the Clark defense team, and not the government.

Michael Kyle Sewell, 19-cr-137 (N.D. Tex.): Sewell, an 18-year-old resident of North Texas, attempted to recruit another person to join a designated FTO operating in Pakistan. Sewell put the person in contact with someone he thought would facilitate joining the FTO but was, in fact, an undercover FBI agent. Sewell pled guilty and was sentenced on September 17, 2019, to the statutory maximum of 20 years imprisonment.

Mohamed Naji, 16-cr-653 (E.D.N.Y.): Naji, a 40-year-old resident of Brooklyn, traveled to Yemen to join ISIS. Naji pled guilty to one count of attempting to provide material support to ISIS and was sentenced on June 14, 2019, to the statutory maximum of 20 years imprisonment.

Zakaryia A. Abdin, 17-cr-283 (D.S.C.): Abdin was arrested at an airport attempting to travel to Syria or Egypt to join ISIS. Abdin had pledged his allegiance to ISIS to an FBI undercover and had discussed his plans to travel overseas to fight jihad. Abdin pled guilty and was sentenced on June 10, 2019, to the statutory maximum of 20 years imprisonment. His sentence was upheld as both substantively and procedurally reasonable. *See United States v. Abdin*, 801 F. App'x. 893 (4th Cir. 2020).

Adam Raishani, 17-cr-421 (S.D.N.Y.): Raishani pledged his allegiance to ISIS and agreed with another ISIS support to leave the United States and attempt to fight for ISIS in Syria, but he was arrested at the airport. He pled guilty to attempting and conspiring to providing material support to ISIS and was sentenced on April 2, 2019, to 20 years imprisonment on the Section 2339 attempt charge.

Nicholas Young, 818 F. App'x 185 (4th Cir. 2020): Young provided assistance that he believed could be used to recruit others to fight for ISIS and advised one individual on how to travel abroad without being flagged by authorities. Young was convicted of attempting to provide material support to ISIS and sentenced on February 23, 2018, to the then-statutory maximum of 15 years on the Section 2339B charge.

Abdurasul Hasanovich Juraboev and Akhror Saidakhmetov, 15-cr-95 (E.D.N.Y.): Juraboev and Saidakhmetov were roommates in Brooklyn who sought to travel to join ISIS in Syria. Juraboev was arrested after purchasing a ticket for a flight to Turkey and Saidakhmetov was arrested after attempting to board a flight to Turkey. Juraboev and Saidakhmetov both pled guilty to one count of conspiring to provide

material support to ISIS and were sentenced on October 27, 2017, and December 20, 2017, respectively, to the then-statutory maximum of 15 years imprisonment.

Mohamad Jamal Khweis, 16-cr-143 (E.D.V.A.): Khweis, a 28-year-old resident of Alexandria, Virginia traveled to ISIS-held territory in Syria in December 2015, where he stayed in an ISIS safe house and served as an ISIS member, including on the battlefield, for approximately two-and-half months before he was captured by Kurdish Peshmerga forces in March 2016. Khweis was convicted of conspiring, attempting, and providing material support to ISIS and possessing a firearm in furtherance of a crime of violence and sentenced on October 27, 2017, to 20 years of imprisonment for these offenses.

Abdella Tounisi, 13-cr-328 (N.D. Ill.): Tounisi made plans to travel to Syria to join the Al-Nusrah Front ("ANF"). Tounisi visited a purported recruitment website for ANF and emailed the listed contact person, who was actually an FBI agent. Tounisi was arrested at O'Hare International Airport attempting to board a flight to Turkey. Tounisi pled guilty to one count of attempting to provide material support to ANF and was sentenced on October 19, 2017, to the then-statutory maximum of 15 years. The Seventh Circuit affirmed his sentence. *United States v. Tounisi*, 900 F.3d 982 (7th Cir. 2018).

Tairod Pugh, 15-cr-116 (E.D.N.Y.): Pugh, a 47-year-old U.S. citizen from New Jersey and former U.S. Air Force mechanic, travelled from Egypt to Turkey in an effort to cross the border into Syria and join ISIS. Pugh was convicted of attempting to provide material support to ISIS and sentenced on May 31, 2017, to the then-statutory maximum of 15 years imprisonment.

Nader Elhuzayel and Muhanad Badawi, 15-cr-60 (C.D. Cal.): Elhuzayel was arrested at the airport attempting to travel to ISIS-held territory for Syria, following discussions with Badawi online regarding their desire to fight and die as ISIS martyrs. Badawi had purchased Elhuzayel's airline ticket and was also arrested at the airport. They were both convicted of conspiring and attempting to provide material support to ISIS, as well as fraud. Elhuzayel and Badawi were sentenced on September 26, 2016, and October 19, 2016, respectively, to 30 years imprisonment for these offenses.

Adam Dandach, 14-cr-109 (C.D. Cal.): Dandach made plans to travel to ISIS-controlled territory in Syria and was arrested at the airport

attempting to leave the United States. Dandach pled guilty to one count of attempting to provide material support to ISIS and passport fraud and was sentenced on July 25, 2016, to the then-statutory maximum of 15 years on the Section 2339B charge.

Alla Saadeh, 15-cr-558 (D.N.J.): Saadeh assisted his brother in attempting to join ISIS in Syria by paying for his airline ticket. Saadeh also wished to join ISIS himself. He pled guilty to one count of attempting to provide material support to ISIS and was sentenced on May 10, 2016, to the then-statutory maximum of 15 years imprisonment.

Considering these comparators and Defendant's substantial assistance, a 144-month sentence is appropriate to avoid unwarranted sentencing disparities with other defendants who engaged in similar or less serious conduct.

2. Defendant Should Not Receive an Adjustment for Time Spent in SDF Detention

Defendant argues that the time he spent detained by Syrian Democratic Forces ("SDF") should reduce his sentence under United States Sentencing Guidelines ("U.S.S.G.") § 5G1.3(b)(1). *See Defendant's Position on Sentencing*, ECF Doc. 63, ps. 23-24. Defendant correctly concedes that BOP exceptions for awarding foreign custody credit do not apply to this case, however, he then argues that U.S.S.G. § 5G1.3(b)(1) should provide him with the same relief. The government disagrees because Defendant was not held in detention in Syria by or for the United States, or in relation to the offense to which he has pled guilty here, and by its own terms, § 5G1.3(b)(3) does not apply to Defendant's case. The provision Defendant relies upon reads as follows:

§ 5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment.

> **(a)** If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> **(b)** If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
>> **(1)** the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> **(2)** the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

This Court cannot use § 5G1.3(b)(1) to reduce Defendant's sentence because there is no "period of imprisonment already served ***on the undischarged term of imprisonment*** (emphasis added)." Likewise, is impossible for this Court to comply with § 5G1.3(b)(2)'s requirement to run its sentence "concurrently to the remainder of the undischarged term of imprisonment" because no undischarged term of imprisonment exists.

To be clear, Defendant was not convicted of any foreign offense and was held by the SDF—not the United States—as a law of war detainee. Federal appellate case law has long held that even when identical criminal "acts" formed the basis for both a federal offense and a foreign offense, a prisoner is not entitled to credit against a federal sentence for time spent serving a prior foreign sentence. *Jackson v. Brennan*, 924

F.2d 725, 728 (7th Cir. 1991) (applying the predecessor to 18 U.S.C. § 3585 and concluding defendant was not entitled to credit for incarceration in Cuba for related conduct; credit is due "only when the pre-sentence custody is federal custody or non-federal custody that was caused or sustained by the federal government"); *see also Kendrick v. Carlson*, 995 F.2d 1440, 1445–46 (8th Cir. 1993) (no credit for incarceration in the Netherlands for related conduct); *Marks v. Clark*, 61 F.3d 906, 906 (7th Cir. 1995) (federal inmate's prior custody for violating U.K. law was not creditable toward his federal sentence pursuant to 18 U.S.C. § 3585(b)). Here, Defendant's detention by the SDF was not "caused or sustained by the federal government." Irrespective of whether his SDF detention was related to the conduct that gave rise to his federal charge, federal law disqualifies him from receiving custody credit for both, and § 5G1.3(b)(2) is wholly inapplicable to Defendant's case because no undischarged term of imprisonment exists.

Notwithstanding the fact that Defendant will not receive credit from BOP and should receive no downward adjustment of his sentence under § 5G1.3(b)(1) for the period he was detained by the SDF in Syria, the government considered and incorporated Defendant's detention in Syria when arriving at its recommended sentence of 144 months imprisonment.

    3. <u>Criminal History Category</u>

Both parties have agreed to the application of U.S.S.G. § 3A1.4, the "Terrorism" enhancement. As such, Defendant is placed in Criminal History Category VI. Defendant argues, however, that the Criminal History VI exaggerates his risk of recidivism and then

asks this Court to vary downward as a result. *See Defendant's Position on Sentencing*, ECF Doc. 63, ps. 31-36.

Defendant overlooks that criminal history is the component of a guidelines calculation that is used to assess the risk of recidivism. One does not calculate criminal history in a guidelines analysis merely to perform a mathematical exercise; courts calculate criminal history because it is one factor that helps them assess the risk of recidivism, and accurately predicting recidivism risk is an important part of sentencing. 18 U.S.C. § 3553(a)(2)(C) (one of the objectives of sentencing is to craft a sanction that will "protect the public from further crimes of the defendant"); *United States v. Foote*, 705 F.3d 305, 308 (8th Cir. 2013) ("a primary goal of the guidelines is to reduce recidivism" quoting *United States v. Hines*, 628 F.3d 101, 113 (3rd Cir. 2010)). Some crimes, such as terrorism, are weighted more heavily than others for guidelines criminal history purposes because some crimes predict recidivism more strongly than others. "Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *United States v. Ressam*, 679 F.3d 1069, 1091 (9th Cir. 2012) (citations and brackets omitted) (quoting *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003)).

Congress engaged in this analysis when it directed the Sentencing Commission to place certain terrorism defendants in Criminal History Category VI. As the Second Circuit observed in *United States v. Stewart*, 590 F.3d 93, 143 (2d Cir. 2009), "we have recognized that 'the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under [U.S.S.G.] § 3A1.4(b), because even

terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation.'" (quoting *Meskini*, 319 F.3d at 92 (emphasis supplied)); *United States v. Ali*, 799 F.3d 1008, 1031 (8th Cir. 2015) (adopting "Second Circuit's well-reasoned conclusion in *Meskini*"). The Sentencing Commission, at Congress's direction, recognized the heightened risk of recidivism posed by individuals who commit crimes motivated by religious fanaticism. That recognition took the form of placing such defendants in Criminal History Category VI.

4. Defendant's Age

Beyond the downward departure the government has already requested due to his substantial assistance, the government opposes a variance based on his youth. Defendant cites *United States v. Ramsay*, 538 F.Supp.3d 407 (S.D.N.Y. 2021)[2] which opined that "immaturity", "susceptibility", "salvageability", and "dependence" were relevant to sentencing consistent with the § 3553(a) factors. An examination of those four factors serves to underscore the fact that, while Defendant was indeed a young man at the time he began his offense conduct, his age does not warrant a downward variance in this case. First, Defendant's conduct was neither rash nor impetuous. Rather, his crime was considered, calculated, planned, and then executed with relative sophistication. Of note, the *Ramsay* court was focused on "high-pressure, time-sensitive, emotional contexts ('hot

---

[2] The court in *Ramsay* was examining whether extraordinary and compelling circumstances warranted a reduction of defendant's then-mandatory sentence of life imprisonment for murder under 18 U.S.C. § 3582(c).

cognition')" and that in such environments, younger adults tend to make riskier decisions. *Ramsay* at 419-20. Second, though susceptible to ISIS's radicalized messaging, the determination required to travel overseas to join the terrorist organization on the battlefield undercuts the argument that Defendant's age is mitigating. Third, whether Defendant's radicalized beliefs and behaviors are "transitory" in nature is presently unknowable. While optimism is warranted in this case, his full deradicalization is not guaranteed. Finally, the extent to which the defendant's actions may be explained by the environment in which he was raised appears wholly inapplicable to Defendant's case. The reality is that Defendant had strong family support before he joined ISIS and he has their support now. Importantly, it was *despite* this strong support that he chose to betray his family – and his country.

## CONCLUSION

For all these reasons and those set out in the Government's Position on Sentencing at ECF Doc. 61, the United States respectfully asks this Court to sentence Defendant to a term of imprisonment of 144 months, followed by a lifetime of supervised release.

Dated: April 24, 2024

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*s/ Andrew R. Winter*

BY: ANDREW R. WINTER
Assistant United States Attorney
Attorney ID No. 0232531